The United States Court of Appeals for the Ninth Circuit is now in session. Good morning everyone and welcome to the Ninth Circuit. Judge Miller and I want to thank Judge Christensen again for braving the hailstorm yesterday we had in Pasadena. Before we begin today, I wanted to just take a moment to remember Walter Dellinger. Walter Dellinger passed away either last night or this morning. He at one time was the acting Solicitor General of the United States, long-time Duke Law professor, long-time O'Melveny & Myers partner, and a mentor to generations of lawyers, including me. I would not be here without his wisdom and guidance and help over the years. So I want to just send condolences to his family. Hampton and Andrew Hampton is the head of the Justice Department's Office of Legal Policy. So Walter was a good guy, the kind of person you never think would pass away. He would just be around forever. So with that, my sorry to the family. And he would be very upset with me if I didn't continue to be a little bit sarcastic and at times do an argument. So my behavior is not going to change. So on the calendar today, we have a number of cases that have been submitted. Zhang, Valle, and Sital. The first case we have up today is Lincoln Benefit Life Company v. DeLal. Counsel, Ms. Cohen, Mr. Seals, you can both hear me okay? Great. I see you both nodding your heads. All right. Terrific. So Mr. Seals, I believe you're up first. Is that correct? I believe so, Your Honor. All right. You have the floor. If you want to reserve time, I leave that to you. Yes, Your Honor. Thank you. I would like to reserve three minutes for rebuttal. Sure. Good morning, Your Honors. Thank you for being here today. I wanted to start off with just a little bit further examination of the issue of the cancellation of my client's DeLal's insurance contract. The case we have here is a case of a district court essentially admitting to that under the rules of construction of an insurance contract, there is no reason to cancel the policy. There's no basis for the cancellation, whether in statute or in the law, because such a cancellation would not reflect the will of the contracting parties. In the face of this, fashioning an equitable solution that disregards the rules of contract interpretation would be, I submit, that it would be tantamount to going against a statute. A district court cannot fashion equitable relief contrary to a statute. It should also not be able to fashion equitable relief contrary to the standard rules of contract interpretation and against the will of the parties as it existed at the time of the contract. Do you dispute that under California law, a court has the equitable authority to void a contract? Do you think that's something a court can ever do? I don't think that that issue is raised here. I believe that the equitable power to do that would still have to be balanced against public policy implications and the statutory concerns. So, yes, a court can void a contract. Okay. So, but if that's true, then, I mean, you were saying that it was inappropriate for the court to do so here because it was disregarding the intent of the parties as reflected in the contract. But it seems like any time a court voids a contract, by definition, it's setting aside what the parties said in the contract. So, I'm not sure, maybe you can elaborate on why you think that that makes the district court's decision wrong. Well, Your Honor, the voiding of a contract, the voiding of contracts that I've seen in the case law, and certainly in the case law that has been debated in this case, there has never been a case that we've seen where a district court would void a contract that is clearly in violation, that would clearly be against the intent of the parties. This is particularly true in the insurance context where, if there's any ambiguities, they need to be resolved against the insurer. So, while, whether or not the court has a general equitable ability to void contracts, I'm not sure that that question is entirely at issue here because of the clarity of the contract itself in the complete absence of a fraud provision. Well, why is that? I mean, I take your point that there is no provision specifically addressing fraud, but it seems a stretch to go from that to saying that the parties had a clear intent. There's nothing in the contract that clearly says that if one party carries on a 12-year scheme to defraud the other, the contract will nonetheless remain in force. Is there? No, Your Honor, but there's also not a provision that allows it to be voided in that instance, and that is why the public policy considerations of the state of California need to supersede whatever considerations the district court was putting forward here. The state of California considers this to be an important issue, that when there's an ambiguity, as Your Honor has raised, if Your Honor is raising an ambiguity, the ambiguity needs to be construed against the insurer, even in the case of fraud. If there's an ambiguity. In most contracts, there's not an ambiguity because there's a fraud cancellation provision. I would submit that there's no ambiguity, that the intent of the parties is clear, but if what Your Honor is saying is the consideration, then all that simply does is raise an ambiguity which needs to be found against, construed against the insurer. Under the California rules of contract interpretation. A foreign corporation such as Lincoln Benefit would receive a different kind of treatment, preferential treatment in the federal courts that they would be able to avail themselves of than they would in California courts, which would interpret this on strict contract grounds. And what's your authority for that? I mean, other than the general principle that ambiguities are construed against the insurer, is there any California authority for the proposition that a court cannot order rescission of a policy even after one party has engaged in this extensive fraud? Your Honor, the reason that we are here today is that there is no case on point. A moment ago, you said that we'd be creating a different rule for the federal courts than for the state courts, and if the state courts haven't adopted the rule you're urging, then it seems like that wouldn't be true, is it? Well, Your Honor, they haven't afforded any corporation the leniency that the district court here afforded to Lincoln Benefit, and under the rules of strict construction against the insurer, I fail to see how they would. They have not deviated from strict construction in other circumstances against the insurer, and so I fail to see how their lack of expression of a hyper-specific principle in this case would be determinative. It's still the same rules of contract interpretation, just when California courts apply it, they've applied it consistently, and this district court decision is an outlier. An additional issue here, and this is something I would like to point out with respect to the statute of limitations, to call out with a little more specificity here, is that in Lincoln Benefit's opposition to Appellant's opening brief, they stated that the excessive hours by the caregiver that Lincoln Benefit was paying for didn't trigger an investigation because it was part of an overall package of information that Lincoln determined was truthful, and that was based on Lincoln's primary witness, Norman Seaman. I do think that we need to consider this a little further because it is somewhat of an astonishing admission, because the only reasonable way to read that sentence is as an admission that the caregiver hours were indeed excessive. And Lincoln doesn't deny that they knew of these hours, they don't deny that they were excessive, and they don't claim that an investigation wouldn't have uncovered any fraud. The only thing that they say is that, well, in the larger context here, in the whole gestalt of information, we decided to disregard that. That's the sum total of their argument, is that they disregarded something that would have led to the discovery of what they term as fraud. And with that in mind, I think that you really have to re-examine the issue of whether or not the statute of limitations here was correctly applied, because they had this information years before a later report triggered an investigation. And that report was also in the same context of the whole milieu of things that suggested that there was no fraud. Mr. Seals, let me ask you a question about that argument, and maybe I'm a little simple-minded. But as I understand your client's position, they continue to maintain their innocence, they continue to assert that they did not commit any fraud. And yet the argument that you seem to be making is that the fraud was so obvious that Lincoln should have discovered it years earlier. Those strike me as being conflicting arguments. Am I missing something? Your Honor, I don't think that my client's committed fraud. Right. And yet you're saying that the fraud was so obvious it should have been discovered by Lincoln earlier. What I'm saying, Your Honor, perhaps I'm not being clear, and thank you for pointing that out, is that the items which triggered the investigation by Lincoln were things that they say raised an issue, raised their investigatory questions. And this is an admission that the same investigatory questions should have been triggered earlier. Now, whether or not those caregiver hours were excessive considering what Mr. DeLaw was actually going through, it still harms my clients in the larger context if they're being forced to defend against an excessive statute of limitations, an excessively applied statute of limitations here, based on the discovery rule and nothing more. It's inequitable, and it put my clients behind the eight ball from the beginning. And along with the other aspects of it, the exclusion of Dr. Chow's testimony, I think that my clients were incorrectly found to have committed fraud here. Do you want to reserve the rest of your time? I do, thank you, Your Honor. Very well. All right. Ms. Cowan, go ahead. Thank you. Good morning. May it please the court. I'm Melissa Cowan, representing a pallium plaintiff, Lincoln Benefit Life Company. Mr. and Mrs. DeLaw received a fair trial. The jury verdict confirmed that for many years, both of the DeLaws systematically defrauded Lincoln under a joint long-term care insurance policy. The evidence showed that DeLaw submitted hundreds of forged claim forms, altered medical certifications, feigned incapacity on medical evaluations, and repeatedly lied about Mr. DeLaw requiring and receiving caregiving services, which is the only expense the policy reimbursed. The jury awarded over $619,000 in fraud damages, and the evidence of the DeLaw's fraud was so clear and convincing that the jury also awarded $300,000 in punitives. After extensive briefing and after sitting through a very long two-and-a-half-week trial, Judge Fitzgerald appropriately exercised equity to find Mr. DeLaw was not entitled to policy benefits through the time of the complaint in December 2016, and that the DeLaw's fraud was so reprehensible that their joint policy should be voided as of July 2016, the first day Mr. DeLaw was identified on surveillance. Now, significantly, the DeLaws do not appeal the fraud findings by the jury and the court. They ignore these findings because they permeate and denigrate the fabric of the arguments presented in the briefing. They raise four challenges, which cannot change the outcome of the case. First, the district court's exclusion of the DeLaw's late designated expert, Dr. Chau, was not an abuse of discretion and should be affirmed. The DeLaws did not abide by the federal rules and the court order for expert designations, never provided the required expert report, and failed to offer Dr. Chau's expert opinion until well after the discovery and motion deadlines had expired. Second, the jury's finding that leaking met its burden on the statute of limitations should be affirmed. The DeLaws waived their challenge to the delayed discovery rule outlined in jury instruction 23 because the court adopted the DeLaw's proposed date of 2013, and the DeLaws never objected to the instruction, which is the same language mirrored in the special verdict. The DeLaws also cannot overcome the substantial weight of the evidence supporting that leaking met its burden. Third, the punitive damages award should be affirmed because it was not unconstitutionally excessive. Not only does it satisfy the guidepost for punitive set forth by the U.S. Supreme Court, but it's half the compensatory. Finally, the district court properly exercised equity in voiding the DeLaw's joint policy, and that decision should likewise be affirmed. Independent of the jury, the court found what it called ironclad evidence of their fraud from the trial, for example. The court was particularly taken with the DeLaw's submission of false reimbursement requests for the private caregiving that never occurred, such as when they took more than 20 vacations around the country and the world, and when Mr. DeLaw was caught red-handed on surveillance going to his business, performing the tasks of a shop owner, sweeping, greeting customers, locking up his store at night, and engaging in the very activities that both of the DeLaws said he could not perform. And this is all without a caregiver. On these facts, Judge Fitzgerald had the right to exercise equity in the absence of a contrary statute or policy provision. And because the DeLaws have focused on this one issue as has the court, I'd like to address equity. Equity was necessary and vital to combat and right the wrong of the DeLaw's egregious fraud here. As the district court stated in its decision in the motion for new trial, equity is a form of conscience. And that's that excerpt of Record 13. It's flexible and expanding so the court can fashion a remedy when there's a new type of wrong that hasn't been addressed. The facts here called for this precise situation. The jury had found an independent finding of punitive damage-worthy fraud. The district court separately determined that there was likewise fraud at such a high level, which the court described in the motion hearing as it was ironclad, reprehensible, and criminal-like. It should have warranted prosecution. In those circumstances, it had to fashion a remedy to avoid the policy prospectively. And that's that Supplemental Excerpt 10-11. The court found the jury's award did not compensate Lincoln for the future harm it would suffer. And it determined that Lincoln would be irreparably harmed if it was forced to provide coverage on an ongoing basis when the DeLaw's had irreparably damaged them. Now, the DeLaw's made an argument to the district court, and again in their briefing, that, well, hey, keep the contract and all the company has to do is investigate. Well, practically speaking, how would Lincoln be expected to respond to future claims of the DeLaw's knowing that they had unwaveringly and willingly lied over the course of more than a decade and falsified documents? The court rejected that argument and concluded that it would simply put Lincoln into a vulnerable position. The court found that the policy provision was lacking, so no adequate remedy at law existed. There was no fraud cancellation provision. And there was no statute prohibiting equitable voiding of the policy. Now, the DeLaw's have basically argued and agreed that there's equity, but that equity has been misapplied, they claim. And what the DeLaw's have done is tried to put equity in a box. They haven't cited a single case or statute precluding the application of equity to an egregious insurance fraud claim. Now, first, the DeLaw's claim, well, hey, there's an ambiguity here. The DeLaw's concede at page 25, line 9 of their opening brief that there's no fraud cancellation provision, so there can be no ambiguity. Well, this soundbite argument that, oh, construed against the policy issuer, that's inaccurate. Because what the DeLaw's have to do in order to make this argument is they have to go all the way down the garden path in contractual interpretation concepts. Well, you can't get there. There's no ambiguity in this contract. There's no fraud cancellation provision. Everybody agrees. The DeLaw's then argue, well, let's just say for the sake of argument, well, they expected to keep the policy. First of all, there has been no evidence from either party about the intent of the policyholders, the reasonable expectations in entering this contract. But you could assume that no one is going to enter into a contract like Lincoln, assuming that, yeah, we're going to condone fraud and let you rip us off. And certainly it wasn't reasonable for the DeLaw's to have this expectation when they entered the contract that if we rip the insurance company off and commit insurance fraud, we're going to keep the instrument under which we've been ripping them off. That's not reasonable. The DeLaw's also claim there has to be some mutual assent to cancel the policy. Well, the Spot Electrical and the Glen Falls case that they've cited in their briefing, they don't deal with insurance claim fraud. They deal with replacement coverage. The Ninth Circuit also rejected this contract concept in the Coca-Cola case at 575 at 2nd 222 at page 230, note 9, stating, I have it right here, the equity power of district courts to fashion effective relief is not constrained by technical doctrines of contract law. Now, the DeLaw's then claim in their brief, their reply brief, that hold on, it's completely against California law to do this. They must concede there's no statute that prohibits the company or the court, let's say here, for the court from voiding the policy, particularly when there's such egregious, egregious punitive damage-worthy fraud. Now, here the court can actually employ equity to avoid the policy, and that's rationally tied to California statutes that espouse equitable privileges and principles. California Civil Code 3523 states, for every wrong, there is a remedy. And the court actually mentioned that in its decision. California Civil Code 3412 likewise says, a written instrument can be canceled if there's reasonable apprehension. If left outstanding, it could cause serious injury to a person against whom it's voided. It should be voided. The court acknowledged that this had only been applied in real estate cases. So, it wasn't going to apply it here directly, but it doesn't say the court can't void. Under these circumstances, the egregious fraud should not stand, and Judge Fitzgerald made the right call employing equity. At the time of the meeting, I'd like to address some... another argument, that being that this policy should be read as, in fact, being two separate policies, ensuring both Mr. and Mrs. Dallal, and that at least Mrs. Dallal's policy should remain in effect. Can you address that argument? Certainly. The district court judge also analyzed that, and as we offered evidence. The court found, and as I agreed, that the separate coverage issue they've offered is irrelevant, because Mrs. Dallal was not an innocent, let's put it this way, in this wrongdoing. The cases cited by the Dallal's Wilkins, I believe, there was an innocent husband, and the Coca-Cola versus Columbia casualty case, there was an innocent sister company. There, the courts looked at this and said, acknowledge that this could happen, and equity can be employed if there was an innocent... could not be employed if there was an innocent co-insured. That was not Mrs. Dallal. And in fashioning this equitable remedy, the district court rejected this very argument about a severable policy, because the Dallals worked together to submit the fraudulent claim. But with regard to the argument that it is separate, we heartily disagree, because they have a joint policy. The Dallals applied for and obtained a joint policy covering two insureds. The policy incorporates a joint coverage endorsement. Mrs. Dallal's application cites it's an application for joint coverage, and the policy states that it provides joint coverage with no right of conversion to an individual policy. So, in this instance, where the Dallals have not offered any proof of any underwriting, or that the company considered this differently, they cannot now speculate that there are two policies before the court. And I know that Judge Fitzgerald addressed this, and he said Mrs. Dallal should not be rewarded for her role in the scheme on a mere technicality that helped submit fraudulent claims for her husband, and not yet herself. That's an excerpt of Record 14. With regard, I'll just generally address the two issues that the Dallals raised. With regard to the statute of limitations, the court addressed this and recognized that this issue of 80 hours, the caregiver working 80 hours a week, had been submitted to the jury. It was rejected. It was again submitted to the district court and rejected again. And let me put this in context. At the beginning of the claim in 2004, the Dallals claimed, you know, we need 8 hours a day, 5 days a week. As they alleged Mr. Dallal's condition declined, as the claim forms showed, as the medical information submitted showed, and as the nurse evaluators who went out there reported, he was declining. And so, if someone's condition declines and they're claiming significant dementia, they can not do any of their ADLs or most of their ADLs alone, it would warrant increased care. 80 hours a week would be appropriate. And Mr. Seaman actually said that that is something that he's seen and that's done. And so the jury accepted this, and the jury determination on statute of limitations should be affirmed. And then lastly, there was a reference to Dr. Chow. The Dallals did not follow any of the rules, and there was no abuse of discretion in the court excluding Dr. Chow. They did not identify Dr. Chow at the initial expert designation, even though they acknowledge now that he was intended to comment on cognitive impairment, upon which they had the burden of proof. They did not identify him timely as a rebuttal expert. It was late. But then the court determined later on, he's not a rebuttal expert. And then next, they didn't submit the proper report. They submitted an office note that had no medical conclusions offered as an expert. In this particular instance, the court recognized that it was giving indulgence, and it's at excerpt of record 301 in the transcript. The court acknowledged that in allowing the Dallals to use a late designated expert in their forensic neuropsychologist, Dr. Weiss, and then for treating doctors, it was giving them a huge amount of indulgence. But it was not going to extend that to Dr. Chow, because what Dr. Chow was trying to do with him is late in the game, before trial, they were introducing a brand new medical condition. Ms. Cowan, on this subject, does Judge Fitzgerald, does he modify in any way, shape, or form, or do your local rules for your court modify in any way, shape, or form, Rule 26A2B, in terms of disclosure of experts? Not as to the report, Your Honor, but what happened here is the judge, under the scheduling conference order, gives the parties the opportunity to identify what they would like, and he identified January 12th as the date that initial experts had to be declared, and January 30th as the date that rebuttal experts had to be identified. Okay, so that's your deadline, so I understand that. I'm just wondering if there's been any modification, and I assume there hasn't been, either through Judge Fitzgerald's scheduling orders or through your local rules, any modification to 26A2B. In other words, we look to... Okay, go ahead, I'm sorry. I interrupted you, I'm sorry. As to the report, Your Honor, no. There is absolutely not any indication that the court would declare that. Thank you. The court actually mentioned FRE 702, and said the report, actually the office note that was offered, did not satisfy Federal Rule of Evidence 702. All right. Thank you very much, counsel, for your argument. Mr. Seals, you've got about a minute and a half. Thank you, Your Honor. Really quickly regarding the separate coverages issue, the analysis that the courts have undertaken has all been with respect to policies that the insurer contended were joint policies and not separate policies, and yet they split them apart anyway. And the considerations that they undertook in the analysis of the cases that we cited are the same considerations or very similar considerations, at least as those at issue with DeLaw's insurance contract, including the fact that Mr. and Mrs. DeLaw were separately tested, that the policy survives the death of one or the other. So I think that appellees here are stretching the holdings of the cases when determining that it's a joint policy. As to the irreparable harm, honestly, if Lincoln Benefit has a fraud division, what is the irreparable harm? They've been compensated for the fraud that they say occurred. They got a jury verdict here based in large part on the exclusion of Dr. Chow's testimony. So what exactly would the irreparable harm be other than just being asked to hold to the contract that they made willingly and that they drafted without a fraud provision? Okay. Thank you very much, counsel, for your argument today to both of you. This matter is submitted. We'll move on to the next.
judges: OWENS, MILLER, Christensen